**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| REBECCA ZACHARY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV851 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Rebecca Zachary, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 8, 10; see also Docket Entry 9 (Plaintiff's Memorandum); Docket Entry 11 (Defendant's Memorandum)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of August 14, 2012. (Tr. 211-14.) Upon denial of that application initially (Tr. 81-96, 114-17) and on reconsideration (Tr. 97-113, 120-23), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 126-27). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing (Tr. 29-68), during which Plaintiff amended her onset date to May 1, 2013, her fiftieth birthday (see Tr. 33). The ALJ subsequently determined that Plaintiff did not qualify as disabled under the Act. (Tr. 12-24.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 209-10, 296-97), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through March 31, 2018.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since May 1, 2013, the [amended] alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: diabetes mellitus with diabetic neuropathy.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically

equals the severity of one of the listed impairments in
20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional
capacity to perform light work . . . except stand or
walk six hours of an eight hour workday, for one hour at
a time in either position; lift or carry 50 pounds
occasionally and 25 pounds frequently; and, in
environments that would not allow for concentrated
exposure to workplace hazards, such as heights or open
machinery.

. . .

6. [Plaintiff] is unable to perform any past relevant
work.

. . .

10. Considering [Plaintiff's] age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as
defined in the . . . Act, from May 1, 2013, through the
date of this decision.

(Tr. 17-23 (bold font and internal parenthetical citations

omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social

Security Commissioner's denial of social security benefits."

Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However,

"the scope of . . . review of [such a] decision . . . is extremely

limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

Even given those limitations, the Court should remand this case for further administrative proceedings.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270

4

F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . .

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." <u>Id.</u> at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. <u>Id.</u> at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<em>e.g.</em>, pain)." <u>Hines</u>, 453 F.3d at 562-63.

jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

## B. Assignment of Error

In Plaintiff's sole assignment of error, she contends that "[t]he ALJ erred by finding that Plaintiff's [major depressive disorder ('MDD')] and anxiety were not severe impairments and by failing to account for limitations stemming from these impairments in the RFC." (Docket Entry 9 at 4 (bold font and single-spacing omitted).) According to Plaintiff, her testimony, the mental health treatment of record, and the opinion evidence relating to her mental impairments all demonstrate that "her MDD and anxiety more than minimally affect[ed] her ability to engage in work related activities." (<u>Id.</u> at 10-11.) Plaintiff asserts that "the ALJ's decision must be vacated and the claim remanded for further proceedings so that [Plaintiff's] MDD and anxiety and the medical opinions regarding them can be properly evaluated and factored into the RFC assessment." (<u>Id.</u> at 11.) For the reasons discussed below, Plaintiff's contentions have merit and warrant remand.

"At step 2 of the [SEP], [the ALJ] determine[s] whether an individual has a severe medically determinable physical or mental

---

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

impairment or combination of impairments that has lasted or can be
expected to last for a continuous period of at least 12 months or
end in death."  Social Security Ruling 16-3p, <u>Titles II & XVI:
Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304, at
*11 (Oct. 25, 2017) ("SSR 16-3p").  An impairment fails to qualify
as "severe" if it constitutes "only a <u>slight</u> abnormality . . .
which would have <u>no more than a minimal</u> effect on an individual's
ability . . . to perform basic work activities."  Social Security
Ruling 85–28, <u>Titles II and XVI: Medical Impairments that Are Not
Severe</u>, 1985 WL 56856, at *3 (1985) ("SSR 85–28") (emphasis added).
As regards mental impairments, the applicable regulation further
identifies "basic [mental] work activities" as including:

- Understanding, carrying out, and remembering simple
  instructions;

- Use of judgment;

- Responding appropriately to supervision, co-workers
  and usual work situations; and

- Dealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b).  Plaintiff bears the burden of proving
severity at step two.  <u>Hunter</u>, 993 F.2d at 35.

The ALJ found as follows with regard to Plaintiff's mental
impairments:

> [Plaintiff]'s medically determinable mental impairments
> of <u>depression, bereavement, and dysthymia</u>, considered
> singly and in combination, do not cause more than minimal

limitation in her ability to perform basic mental work activities and are therefore nonsevere.

In making this finding, the undersigned has considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments. These four areas of mental functioning are known as the "paragraph B" criteria.

The first functional area is understanding, remembering, or applying information. In this area, [Plaintiff] has no limitation. [Plaintiff]'s husband indicated that [Plaintiff] shops on a weekly basis for groceries without assistance and, has no difficulty with oral or written instructions. At the psychological consultative examination performed by Christine Venable, Ph.D., on February 12, 2014, [Plaintiff] reported that she manages the household finances, does household chores, drives short distances, and attends church. Dr. Venable found [Plaintiff]'s memory to be low to average. [Consultative medical examiner] Dr. [Stephen] Burgess noted that [Plaintiff] demonstrated good memory skills . . . on January 28, 2014. [Plaintiff] testified that her husband reminds her about medications, but she often forgets them.

The next functional area is interacting with others. In this area, [Plaintiff] has a mild limitation. The medical evidence establishes that [Plaintiff] has a history of emotional distress due to the deaths of her parents and problems with her younger brother. However, she attends church regularly, talks to friends on the telephone, and her husband indicated that [Plaintiff] has no difficulty interacting with others. Dr. Venable noted that [Plaintiff's] social skills were good. [Plaintiff] testified that she attends grief counseling through the local Hospice office on a monthly basis.

The third functional area is concentrating, persisting, or maintaining pace. In this area, [Plaintiff] has no limitation. Dr. Venable noted that [Plaintiff] demonstrated no abnormality of thought processes, her ability to concentrate was low to average, and, her cognitive abilities were low to average. [Plaintiff] testified that she spends her days in a recliner, watching television. She said she has little motivation

or energy. She denied that her psychotropic medications, including benzodiazepines, contribute to her symptoms.

The fourth functional area is adapting or managing oneself. In this area, [Plaintiff] has <u>no</u> limitation. There is no evidence that [Plaintiff] has had adverse interactions with anyone other than her brother.

Because [Plaintiff]'s medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas, they are nonsevere.

(Tr. 18 (internal citations omitted) (emphasis added).) As discussed more fully below, the ALJ failed to support his step two severity analysis with substantial evidence.[6]

1. Plaintiff's Testimony

Plaintiff first faults the ALJ for disregarding Plaintiff's testimony about limitations arising from her mental impairments (<u>see</u> Docket Entry 9 at 4 ((citing Tr. 37-38, 39, 42, 43, 44, 45, 46, 52, 56)), and for placing too much emphasis on Plaintiff's ability to engage in "very undemanding" activities of daily living such as "church attendance, talking to friends and family and []

---

[6] Although not specifically argued by Plaintiff (<u>see</u> Docket Entry 9 at 4-11), the ALJ made no step two finding <u>at all</u> regarding Plaintiff's anxiety, panic attacks, and post-traumatic stress disorder ("PTSD"), i.e., whether they constituted severe impairments, non-severe impairments, or even medically determinable impairments (<u>see</u> Tr. 17-19). The record convincingly establishes that Plaintiff suffers from those impairments. (<u>See</u> Tr. 243 (Disability Report indicating Plaintiff's claim of disability arising from, <u>inter alia</u>, her "nerves"), 300-14 (psychiatric records reflecting anxiety symptoms on examination and diagnoses of PTSD and panic), 334 (treating physician office visit finding Plaintiff "quite tense" and "apprehensive" and diagnosing PTSD), 351 (consultative psychological examiner's report diagnosing MDD "with anxious distress" and "history of PTSD"), and 415 (treating physician visit diagnosing anxiety and PTSD).) Accordingly, the ALJ also erred by failing to evaluate Plaintiff's anxiety-related impairments at step two of the SEP.

going to the grocery store" (id. at 5 (citing Brown v. Commissioner Soc. Sec. Admin., 873 F.3d 251, 263 (4th Cir. 2017), Lewis v. Berryhill, 858 F.3d 858, 868 n.3 (4th Cir. 2017), and Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981))). Although Plaintiff has ultimately established entitlement to remand, this argument falls short.

As the ALJ's above-quoted step two analysis makes clear, the ALJ did not rely solely on Plaintiff's ability to engage in certain daily activities in making the non-severity finding, but also considered Plaintiff's testimony, her husband's statements on a Function Report, and the findings of two consultative examiners. (See Tr. 18.) In that regard, the ALJ expressly acknowledged Plaintiff's statements that "her husband reminds her about medications, but she often forgets them" (id.; see also Tr. 52-54), "that she attends grief counseling through the local Hospice office on a monthly basis" (id.; see also Tr. 47), and "that she spends her days in a recliner, watching television" with "little motivation or energy" (id.; see also Tr. 39-40, 42, 45).

Moreover, the record contains competing descriptions of Plaintiff's ability to engage in activities of daily living. (Compare Tr. 42-46 (Plaintiff's testimony that she does not read, watch television, or visit family, does very little housework, and only grocery shops when absolutely necessary), with Tr. 259-63 (husband's Function Report indicating that, on good days,

Plaintiff cooks, cleans the house, does laundry, watches television, takes care of her dogs, drives, shops in stores, reads and talks on the telephone daily, and attends church weekly), Tr. 343 (Plaintiff's report to consultative medical examiner Dr. Burgess that she can sweep, mop, do laundry, vacuum, wash dishes, cook, dust, make beds, scrub when motivated), and Tr. 349 (consultative psychological examiner Dr. Venable's report reflecting that Plaintiff mainly sleeps during the day, does chores when she has energy, drives short distances, talks to one friend on the telephone, reads books, and attends church).) The ALJ apparently chose to credit the material reflecting a greater ability to perform such activities, and Plaintiff has not provided the Court with any basis to disturb the ALJ's resolution of that conflicting evidence. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990) ("Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.")

2.   Mental Health Treatment of Record

Plaintiff additionally challenges "[t]he ALJ's characterization of [Plaintiff's] MDD and anxiety as nothing more than minimal [a]s belied by the record which is replete with treatment for considerable symptoms and limitations from these conditions." (Docket Entry 9 at 7.) In support of that argument, Plaintiff points to mental status examinations conducted by

13

practitioners with Piedmont Psychiatric Associates which documented abnormalities such as anxious affect, minimal eye contact, distractibility, tearfulness, dysphoric mood, and psychomotor retardation. (Id. at 7-8 (citing Tr. 300-01, 305-12).) Additionally, Plaintiff notes that the records of treating physician Dr. James McGrath repeatedly refer to Plaintiff's poor sleep pattern, emotional stress, despondency, and flat affect, as well as the impact those issues have on her poorly controlled diabetes. (Id. at 7-9 (citing Tr. 318-20, 328-32, 364-66, 368, 372, 395, 403, 411, 415, 425, 435, 447, 452).) Plaintiff's arguments hold validity.

Despite the volume of mental health evidence of record and, more importantly, the significance of the findings within those records, the ALJ did not discuss any of those records at step two of the SEP. (See Tr. 19-21.) As Plaintiff argues (see Docket Entry 9 at 7-8), practitioners with Piedmont Psychiatric Associates consistently observed significant mental symptoms such as dysphoric mood, blunt affect, psychomotor retardation, poor eye contact, tearfulness, and distractibility (see Tr. 300-14), and noted on more than one occasion that Plaintiff remained so tearful that she could not speak or compose herself and that attempts at redirection failed to focus her on goals or treatment options (see Tr. 304, 305, 307, 308, 311, 313). Similarly, as noted by Plaintiff (see Docket Entry 9 at 7-9), Dr. McGrath made repeated

14

references to Plaintiff's despondency, her lack of insight into her own emotional and psychological difficulties, her inability to overcome those difficulties and properly manage her diabetes symptoms, and the treatment-resistant nature of her depression (see, e.g., Tr. 318, 328-32, 365, 368, 373, 418, 425, 436). That evidence flatly contradicts the ALJ's finding that Plaintiff's mental impairments caused no more than a minimal effect on her ability to engage in mental work-related activities (Tr. 18). The ALJ's failure to discuss such probative evidence impedes the Court's ability to meaningfully review whether the ALJ applied proper legal standards in finding Plaintiff's mental impairments non-severe and renders the ALJ's step two finding unsupported by substantial evidence.

3.   Mental Opinion Evidence

Plaintiff also contends that the ALJ improperly evaluated the mental opinion evidence in the record in connection with his step two non-severity finding. (See Docket Entry 9 at 5-6, 9.) More specifically, Plaintiff challenges the ALJ's rejection of Dr. McGrath's opinions as well as those of the state agency psychological consultants (id. at 6), and argues that the ALJ misconstrued Dr. Venable's opinion (id.; see also id. at 9). Plaintiff notes that "the ALJ's finding that [Plaintiff] ha[d] no severe mental impairment and his decision to include no mental limitations in the RFC is not supported by any of the medical

opinions in the record." (Id. at 6 (internal citation omitted)
(citing Kirk v. Berryhill, No. 1:16CV18, 2017 WL 990470, at *6-7
(W.D.N.C. Mar. 14, 2017) (unpublished)).) Plaintiff's contentions
ultimately have merit.

a. Dr. McGrath

Dr. McGrath opined on three occasions from July to September,
2013, that Plaintiff "remain[ed] disabled for all occupations."
(See Tr. 319, 320, 321.) The ALJ rejected those opinions as
follows:

> Dr. McGrath has [] attributed [Plaintiff]'s problems
> with glucose control and management to her underlying
> emotional and psychological problems. However, on May
> 14, 2015, Dr. McGrath called [Plaintiff]'s pharmacy and
> was informed that she had not filled any prescriptions
> for Lantus insulin since November of 2013. [Plaintiff]
> also reported that she did not always eat
> regularly. . . .
>
> Dr. McGrath's medical records document that [Plaintiff]
> has experienced no sustained damage to her kidneys. [Dr.
> McGrath] has attributed some of [Plaintiff]'s reported
> gastric issues to gastroparesis, but there are no
> objective findings to support that diagnosis, and
> [Plaintiff]'s symptoms responded quickly to Zofran. Dr.
> McGrath has prescribed gabapentin for [Plaintiff]'s
> allegations of neuropathy pain in her feet, but on
> October 26, 2016, [Plaintiff] demonstrated no signs of
> neuropathy. . . .
>
> No weight has been afforded the conclusory statements
> made by Dr. McGrath that he considered the claimant to
> be "disabled." Social Security law provides that the
> medical opinion of a treating physician, particularly
> with regard to the nature and severity of an impairment,
> is entitled to "controlling" weight if supported by
> objective medical evidence and consistent with other
> substantial evidence of record, and is entitled to
> "great" weight unless there is persuasive contradictory

evidence. However, statements that a claimant is "disabled[,"] "unable to work[,"] "can or cannot perform a past job[,"] or "meets a Listing[,"] or the like, are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate the statutory responsibility to determine the ultimate issue of disability. Opinions on issues reserved to the Commissioner can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence. As discussed more completely above, there are significant inconsistencies contained in the records of Dr. McGrath, and therefore, his conclusions cannot be accepted.

(Tr. 19, 21 (internal citations omitted).)

The ALJ did not err in rejecting Dr. McGrath's opinions that Plaintiff qualified as disabled. As recognized by the ALJ, Dr. McGrath's disability opinions concern dispositive matters reserved to the Commissioner and, as a result, did not warrant controlling weight, see 20 C.F.R. § 404.1527(d). Moreover, the ALJ pointed to evidence in Dr. McGrath's own treatment records that Plaintiff's noncompliance with recommended diabetes treatment, as opposed to Plaintiff's "underlying emotional and psychological problems," caused Plaintiff's "problems with glucose control and management." (Tr. 21.) The ALJ did not err with respect to his rejection of Dr. McGrath's disability opinions.

b.  State Agency Psychological Consultants

The state agency psychological consultants both opined that Plaintiff's depression and anxiety qualified as severe

impairments, because they caused Plaintiff to suffer moderate
limitation in her ability to engage in daily activities, function
socially, and maintain concentration, persistence, or pace (but
caused no episodes of decompensation of extended duration). (See
Tr. 86, 104.)[7]  With regard to Plaintiff's mental RFC, each
consultant limited Plaintiff to "simple instructions" and/or
"simple tasks" and/or "simple, routine tasks" (Tr. 90-92, 108,
110), non-production rate work (see Tr. 91, 109), as well as
"routine stress and pressure" (Tr. 92, 110), and indicated that
Plaintiff "m[ight] tend to have trouble interacting easily and
effectively with others at times" (Tr. 92, 109). The ALJ evaluated
those opinions in the following manner:

> [N]o weight has been afforded the [state agency
> psychological consultants'] conclusions as to
> [Plaintiff]'s mental limitations . . . . While possibly
> consistent with the limited medical evidence available
> at the time the conclusions were made, a complete record
> indicates that [Plaintiff]'s mental impairments were not
> as significant as [the state agency psychological
> consultants] concluded.

(Tr. 21 (emphasis added and internal citation omitted).)

The ALJ failed to support his analysis of the state agency
psychological consultants' opinions with substantial evidence. As

---

[7] The state agency psychological consultants evaluated Plaintiff's depression
and anxiety using the criteria for evaluating mental disorders in the Listing
of Impairments in effect in 2014 (see Tr. 86, 104). See 20 C.F.R. Pt. 404,
Subpt. P, App'x 1, §§ 12.04, 12.06 (2014). Effective on January 17, 2017, the
Commissioner made substantial revisions to those criteria. See https://www.
federalregister.gov/documents/2016/09/26/2016-22908/revised-medical-criteria-
for-evaluating-mental-disorders (last visited Jan. 27, 2020). The ALJ's
decision, dated October 4, 2017 (see Tr. 24), applied the new criteria to
analyze Plaintiff's mental impairments (see Tr. 18).

an initial matter, the ALJ neglected to identify the later evidence that the consultants did not have an opportunity to review that supposedly weighed in favor of a non-severity finding. (See id.) However, a review of the record reveals that the evidence before the consultants included 1) all of Plaintiff's records with Piedmont Psychiatric Associates (dated September 13, 2012, to August 9, 2013) (see Tr. 300-14); 2) the consultative examination report of Dr. Venable dated February 12, 2014 (see Tr. 348-52); 3) the consultative examination report of Dr. Burgess dated February 3, 2014 (see Tr. 342-46); and 4) treatment notes from Dr. McGrath dated from November 8, 2012, to February 10, 2014 (see Tr. 317-39, 375), with the reconsideration-level consultant having additional records from Dr. McGrath dating to November 24, 2014 (see Tr. 98, 364-74). Thus, Dr. McGrath's treatment notes from January 26, 2015, to March 8, 2017, constitute the only mental health evidence neither consultant reviewed. (See Tr. 389-452.)

Furthermore, those notes, contrary to the ALJ's finding, do not show an improvement in Plaintiff's mental condition. (See id. at 392 (reflecting Plaintiff's mood as "sad" and "apathetic"), 403 (indicating that Plaintiff had two good days and four bad days per week and remained depressed), 418 (observing Plaintiff continued to have "no clue" as to detrimental effect co-dependency with brother had on her mental wellbeing and documenting that Plaintiff continued to sit around and remained "tired" and "depressed"), 425

(discussing Plaintiff's "poor insight" about her "dysfunctional co-dependency with her substance abusing brother), 431 (describing Plaintiff as "too thin," "tired," "apathetic," "depressed," and with "little expression"), 436 (opining that Plaintiff needed to mitigate underlying emotional and psychiatric issues to reduce high adrenergic tone), 449 (noting Plaintiff's "subdued" and "depressed" demeanor), 452 (reflecting observation of Plaintiff's "usual flat affect").) Thus, the ALJ did not provide a rationale supported by substantial evidence to reject the opinions of the state agency psychological consultants, which further undermines his step two non-severity finding.

c. Dr. Venable

Plaintiff contends that "[t]he ALJ [] misconstrued the opinion" of Dr. Venable (Docket Entry 9 at 6) as "find[ing Plaintiff] capable of working without qualification" (id. at 9). According to Plaintiff, Dr. Venable actually found that Plaintiff "'appeared able to understand and retain verbal directions and instructions, relate to others including fellow workers and supervisor[s], tolerate stress and pressures associated with day to day work activities, and sustain attention to perform simple repetitive tasks, *although limited by* medical problems, medication, *mental health problems*, and physical ailments.'" (Id. (emphasis supplied by Plaintiff) (quoting Tr. 351).)

The ALJ afforded "great weight" to Dr. Venable's opinions, noting that "Dr. Venable opined that[,] despite [Plaintiff's] physical and mental impairments, [she] was able to understand and retain verbal directions and instructions, relate to others, tolerate the stress and pressures associated with day-to-day work activities, and sustain attention to simple repetitive tasks." (Tr. 22 (emphasis added).)[8] As the language emphasized above makes clear, the ALJ interpreted Dr. Venable's statement to mean that, although impairments and medications limit Plaintiff, she can nevertheless sustain attention well enough to perform simple, repetitive tasks. In contrast, Plaintiff interprets Dr. Venable's opinion to mean that, although Plaintiff possessed the cognitive ability to sustain attention sufficiently to perform simple, repetitive tasks, her impairments and medications further limited her in some unspecified way. (See Docket Entry 9 at 9.) Because Plaintiff's interpretation renders Dr. Venable's opinions vague and undefined, the Court should not fault the ALJ for the manner in which he interpreted Dr. Venable's opinions.

However, the Court should nonetheless find that the ALJ erred with regard to his evaluation and weighing of Dr. Venable's opinions. Although the ALJ specifically accorded "great weight" to Dr. Venable's opinion that Plaintiff "was able to . . . sustain

_____

[8] The ALJ did not provide any reasons for assigning "great weight" to Dr. Venable's (or Dr. Burgess's opinions). (Tr. 22.)

attention to simple, repetitive tasks" (Tr. 22), the ALJ neither included a limitation to "simple, repetitive tasks" in the RFC (see Tr. 20) or the dispositive hypothetical question to the VE (see Tr. 59-63), nor explained the absence of such a limitation (see Tr. 20-22). For the reasons explained more fully below, that omission does not qualify as harmless error under the circumstances presented by this case.

d. Totality of Opinion Evidence

Plaintiff correctly contends that "the ALJ's finding that [Plaintiff] ha[d] no severe mental impairment and his decision to include no mental limitations in the RFC is not supported by any of the medical opinions in the record." (Docket Entry 9 at 6 (internal citation omitted) (citing Kirk, 2017 WL 990470, at *6-7).) Both state agency psychological consultants deemed Plaintiff's depression and anxiety severe (see Tr. 86, 104) and included non-exertional limitations in the mental RFC to account for those impairments (see Tr. 90-92, 108-10) and, as explained above, the ALJ did not provide a valid reason for rejecting their opinions (see Tr. 21). Dr. Venable, whose opinions the ALJ accorded "great weight" (Tr. 22), opined that Plaintiff's depression and anxiety-related impairments limited her to simple, repetitive tasks. (See Tr. 351.) Lastly, although Dr. Burgess's area of practice does not include mental health treatment, he opined that Plaintiff's "ongoing depression . . . seem[ed] to be

a big issue" and that Plaintiff "w[ould] need to talk to a third-party or have extensive record review regarding [her depression]." (Tr. 346 (emphasis added).) Notably, the ALJ accorded "great weight" to all of Dr. Burgess's conclusions without mentioning (or rejecting) his opinion regarding the significance of Plaintiff's depression. (Tr. 22.) Thus, as Plaintiff argues, none of the opinion evidence in the record supported a finding that Plaintiff's depression and anxiety-related impairments qualified as non-severe and/or failed to warrant any non-exertional limitations in the RFC. Under such circumstances, "the ALJ arrived upon a mental RFC that was not supported by substantial evidence." Kirk, 2017 WL 990470, at *7.

4. Harmlessness

Where an ALJ finds at least one severe impairment at step two of the SEP, any failure to identify other impairments as severe generally does not constitute reversible error, because, "upon determining that a claimant has one severe impairment, the [ALJ] must continue with the remaining steps in his disability evaluation." Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); accord Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Lauver v. Astrue, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W. Va. Mar. 31, 2010) (unpublished); Washington v. Astrue, 698 F. Supp. 2d 562, 579 (D.S.C. 2010); Jones v. Astrue,

No. 5:07CV452, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished).  Moreover, a finding at step two that Plaintiff has a severe impairment does not <u>require</u> the ALJ to include any limitations arising from such impairment in the RFC:

> The determination of a "severe" impairment at step two of the sequential evaluation process is a de minimis test, designed to weed out unmeritorious claims.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, [153] (1987).  A finding of de minimis limitations is not proof that the same limitations have the greater significant and specific nature required to gain their inclusion in an RFC assessment at step four.  <u>See, e.g.</u>, <u>Sykes v. Apfel</u>, 228 F.3d 259, 268 n.12 (3d Cir. 2000).

<u>Hughes v. Astrue</u>, No. 1:09CV459, 2011 WL 4459097, at *10 (W.D.N.C. Sept. 26, 2011) (unpublished).

However, here, the ALJ's decision does not reflect that he considered Plaintiff's depression and anxiety-related impairments <u>at all</u> in the remaining steps in the SEP.  Despite Plaintiff's treatment by psychiatrists in 2012 and 2013 (<u>see</u> Tr. 300-314), and the consistent but ultimately unsuccessful efforts by Dr. McGrath, over more than four years, to treat Plaintiff's depression and anxiety (<u>see</u> Tr. 317-39, 364-75, 389-452), the ALJ failed to discuss a <u>single</u> mental health treatment record or <u>any</u> of Dr. McGrath's mental findings on examination in his discussion of the medical evidence of record (<u>see</u> Tr. 19-21).  Moreover, the ALJ neither included any non-exertional limitations in the RFC (<u>see</u> Tr. 20) and corresponding hypothetical question to the VE (<u>see</u> Tr. 59-63), nor provided an explanation for their absence (<u>see</u> Tr. 20-

22). Under such circumstances, the Court should not find the ALJ's failure to categorize Plaintiff's depression and anxiety as severe impairments qualifies as harmless error:

> While an ALJ's failure to recognize an impairment as "severe" at step two may be considered harmless error <u>if the ALJ considers the impairment at subsequent steps</u>, . . . <u>the ALJ did not adequately consider [the p]laintiff's anxiety at subsequent steps</u>. While [the ALJ] did consider [the p]laintiff's anxiety at step three, when determining that her impairments did not meet Listings 12.04 and 12.06, [the ALJ] did not consider it in determining [the p]laintiff's RFC. The ALJ considered whether anxiety was a disabling impairment when considered alone, but he did not consider it in determining the effects of [the p]laintiff's combination of impairments. The ALJ limited [the p]laintiff to "remembering and carrying out simple instructions as well as the performance of simple, routine, repetitive tasks," but he specified that the limitations were based on pain and fatigue interfering with her concentration. <u>He made no mention whatsoever of the impact of anxiety on [the p]laintiff's RFC</u>.

<u>Krueger v. Commissioner of Soc. Sec. Admin.</u>, No. 1:13CV1677, 2014 WL 4538096, at *14 (D.S.C. Sept. 11, 2014) (unpublished) (emphasis added and internal citation omitted); <u>compare</u> <u>Williams v. Astrue</u>, No. CA 0:10-004-JMC-PJG, 2011 WL 1261339, at *8 (D.S.C. Feb. 2, 2011) (unpublished) ("Even assuming that the ALJ erred in failing to find [the plaintiff's depression and anxiety] to be severe impairments, reversal is not warranted on this ground[, because t]he ALJ clearly considered [the plaintiff's] limitations with regard to her mental functioning in his [RFC] analysis," and discussed "in detail the examination and treatment notes concerning [the plaintiff's] depression and anxiety" (emphasis

added)), <u>recommendation adopted</u>, 2011 WL 1261327 (D.S.C. Mar. 31, 2011) (unpublished), <u>as amended</u>, 2012 WL 1191630 (D.S.C. Apr. 9, 2012) (unpublished) (granting motion to amend judgment on other grounds).

Here, if the ALJ had found Plaintiff's depression and anxiety-related impairments severe, he might have included restrictions in the RFC and dispositive hypothetical question to some variant of simple tasks (as opined by the state agency psychological consultants and Dr. Venable), or to reduced interactions with others, low-stress environments, and/or non-production pace work (as opined by the state agency psychological consultants). The Court can speculate neither about which mental restrictions the ALJ would have included under those circumstances, nor whether the jobs cited by the VE (and adopted by the ALJ) would accommodate any such mental restrictions.[9]

---

[9] Notably, both state agency psychological consultants felt that Plaintiff could not handle production environments (<u>see</u> Tr. 91, 109), but all three jobs cited by the VE (<u>see</u> Tr. 63) and adopted by the ALJ (<u>see</u> Tr. 23) reflect, in varying degrees, a connection to a production environment. For example, the Bakery Worker – Conveyor Line job, according to the <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>"), involves manipulating cakes moving down conveyor belts. <u>See</u> <u>DOT</u>, No. 524.687-022 (Bakery Worker, Conveyor Line), 1991 WL 674401 (G.P.O. 4th ed. rev. 1991). The <u>DOT</u>'s description for the Classifier job indicates that the worker must place sorted laundry either into a receptacle or onto a conveyor belt. <u>See</u> <u>DOT</u>, No. 361.687-014 (Classifier), 1991 WL 672991. The <u>DOT</u> classifies the Checker I job in "Production and Stock Clerks and Related Occupations" and identifies the "Field" as "Production Services." <u>See</u> <u>DOT</u>, No. 222.687-010 (Checker I), 1991 WL 672130.

### III.  CONCLUSION

Plaintiff has established errors warranting remand.[10]

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings to include 1) re-evaluation of the severity of Plaintiff's mental impairments at step two of the SEP, 2) re-evaluation and re-weighing of the opinions of the state agency psychological consultants and Dr. Venable, 3) reassessment of Plaintiff's mental RFC, and 4) if necessary, consultation with a VE to determine whether jobs exist in significant numbers in the national economy that Plaintiff can perform.  As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 8) should be granted in part, i.e., to the extent it requests remand, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 10) should be denied.


/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

January 29, 2020

---

[10] Plaintiff's Memorandum asks for "summary judgment in her favor with reversal of the ALJ's decision for an award of benefits or, alternatively, with a remand of the matter for a new hearing." (Docket Entry 9 at 11.)  In this case, the Court should opt for remand, because Plaintiff's Memorandum does not develop an argument justifying reversal for an award of benefits (see id. at 4-11).